**SIGNED THIS: July 17, 2006**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHAEL HALEY and CAROL HALEY, | ) | No. 05-86520 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| CHASE BANK USA, N.A., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 06-8007 |
| | ) | |
| MICHAEL HALEY, | ) | |
| Defendant. | ) | |

**O P I N I O N**

Before the Court is the motion for summary judgment filed by the Debtor, Michael Haley (DEBTOR) on the complaint filed by Chase Bank USA, N.A. (CHASE) seeking a determination of nondischargeability of its claim for credit card debt in the amount of $8,445.

The DEBTOR filed a Chapter 7 petition on October 13, 2005.  Prior to the filing and between August 17, 2005 and October 10, 2005, the DEBTOR used the credit card issued by CHASE to purchase goods and services on 29 occasions, making purchases totaling $9,460.19.  According to the credit card account records, these 29 charges represent all of the charges that were made during the 60 days preceding the bankruptcy filing.  The DEBTOR operated a retail cell phone business providing for the sale of Nextel products and services for several years preceding the bankruptcy.[1]  Of the $175,170.44 in unsecured claims listed in the petition, $164,035.44 were identified as business debts.

CHASE filed a complaint seeking a determination of nondischargeability of its debt in the amount of $8,445, alleging that this amount was the sum of the cash advances and/or convenience check charges incurred within the 60 days preceding the filing of the petition.  The DEBTOR filed a motion for summary judgment.  A hearing was held on the motion on April 4, 2006, and the Court took the matter under advisement.  Both parties have filed briefs in support of their position.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Summary judgment will be granted only where it is clear that there is no dispute about the facts or inferences to be drawn therefrom.  *Central Nat. Life Ins. Co. v. Fidelity and Deposit Co. of Maryland*, 626 F.2d 537 (7th Cir. 1980).  On a motion for

---

[1] According to the Statement of Affairs, from December, 2003 through December, 2004, the DEBTOR conducted business through an entity known as "Wire to Wire, Inc.," from October, 2004 through December 2004, he operated through "Wire to Wire USA II," and from September, 2004, through the filing of the petition, his business entity was known as "Wire to Wire USA III."  Schedule B discloses that the DEBTOR and his wife each own 50 shares of Wire to Wire III, Inc.

2

summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant bears the burden to prove each fact material to its claim and to establish that each fact is not in genuine dispute. If the movant fails to make that showing, summary judgment is not proper and must be denied. *In re Rogstad*, 126 F.3d 1224, 1227-28 (9th Cir. 1997).

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Matter of Harasymiw*, 895 F.2d 1170 (7th Cir. 1990). The burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In furtherance of the goal of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *Matter of Scarlata*, 979 F.2d 521 (7th Cir. 1992).

CHASE'S single-count complaint, brought under Section 523(a)(2), alleges that the DEBTOR incurred $8,455 in cash advances and/or convenience check charges within 60 days of the bankruptcy petition. CHASE alleges that each time the DEBTOR obtained credit by incurring a charge on the account, he represented an intention to repay the amounts charged. CHASE alleges that it reasonably relied on those representations and suffered damages in the amount of $8,445. Finally, the complaint alleges that the DEBTOR incurred the debts at a time when he had no ability or objective intent to repay them, concluding

3

that the DEBTOR obtained credit by false pretenses, false representations and/or actual fraud.

Section 523(a)(2)(A), provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
> \* \* \*
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Although a number of courts have limited the application of Section 523(a)(2)(A) for credit card debts to a traditional fraud analysis requiring a false representation by the debtor and reliance by the creditor, holding that a debtor's use of a credit card constitutes an implied representation of the intent and ability to repay each charge, this Court has rejected that view. As the Seventh Circuit instructed in *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000), actual fraud is broader than misrepresentation and encompasses "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." This Court has held that the Seventh Circuit's refined definition of fraud, as not always requiring a misrepresentation or reliance thereon, applies to cases involving an alleged fraudulent use of a credit card. *In re Brobsten*, 2001 WL 34076352 (Bankr.C.D.Ill. 2001); *In re Stewart*, 2001 WL 34076425 (Bankr.C.D.Ill. 2001). Under that analysis, a debtor's use of a credit card constitutes "actual fraud" under Section 523(a)(2)(A) if the debtor, at the time the charges were made, had an actual,

subjective intent not to repay them by discharging the debt in bankruptcy or otherwise.[2] The elements of actual fraud under the *McClellan* exception are (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the dispute. *In re Howard*, 339 B.R. 913 (Bankr.N.D.Ill. 2006).

Noting the difficulty of the plaintiff's task of proving a debtor's state of mind at the time the charges are incurred, this Court has sanctioned consideration of the twelve factors enumerated by the Ninth Circuit Bankruptcy Appellate Panel in *In re Dougherty*, 84 B.R.653, 657 (9th Cir.BAP 1988), as a guideline in determining whether a debtor intended to repay the charges incurred.[3] *In re Green*, 296 B.R. 173 (Bankr.C.D.Ill. 2003). So, for example, actual fraud may be proved by showing that the debtor's financial circumstances had gone so far South at the time the charges were made, that he could have had no reasonable expectation of having the ability to repay them. Those factors are not exclusive however, and need not be given equal weight. That determination is a question of fact.

Section 523(a)(2)(C), enacted by Congress in 1984, alleviates the creditor's burden of proof in those cases where a debtor goes on a spending spree on the eve of bankruptcy. Section 523(a)(2)(C) provides:

> (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,225 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more

---

[2] Use of a credit card is nothing more than drawing on a line of credit. One who borrows money while not intending to repay it commits fraud on the lender.

[3] Those factors are: (1) the length of time between charges made and bankruptcy filing; (2) whether an attorney was consulted regarding bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the debtor's financial condition when the charges were made; (6) whether the charges exceeded the credit limit of the card; (7) whether multiple charges were made on the same day; (8) whether the debtor was employed; (9) the debtor's prospects for employment; (10) the debtor's financial sophistication; (11) sudden changes in the debtor's buying habits; and (12) whether the purchases were for luxuries or necessities. *Alvi*, 191 B.R. 724, 733 (Bankr.N.D.Ill. 1996).

5

than $1,225 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable: "luxury goods or services" do not include goods or services reasonably acquired for the support of maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act. . . .[4]

The presumption only applies if all of the requirements of Section 523(a)(2)( C) are met, including that the debt incurred must be a consumer debt. *In re Meyer*, 296 B.R. 849 (Bankr.N.D.Ala. 2003). The effect of the presumption is to relieve the creditor from having to prove intent under Section 523(a)(2)(A).

Based on CHASE'S allegations in the complaint that its debt is a "consumer debt" and that the debt sought to be excepted from discharge was incurred within the "presumption" period, the DEBTOR filed a motion for summary judgment, asserting that all but a small amount of the charges were incurred in connection with his business. In support of his motion, the DEBTOR submitted an affidavit stating that with the exception of two charges totaling $344.99, the goods and services purchased within the 60 days of the filing of the petition were entirely for his business. According to the DEBTOR, because the (a)(2)(C) presumption does not apply to the bulk of the charges incurred within the presumptive period, CHASE loses under subsection(a)(2)(A) as a matter of law.

In support of this unusual interpretation, the DEBTOR relies on *In re Kountry Korner Store*, 221 B.R. 265 (Bankr.N.D.Okla. 1998), a case decided by the court after trial. Based on the bankruptcy court's ruling that the presumption of Section 523(a)(2)(C) did not apply

---

[4]The presumption period has been extended beyond 60 days under the Bankruptcy Abuse Prevention and Consumer Protection Act. The old 60-day period applies here as the DEBTOR'S petition was filed 4 days before the general effective date of BAPCPA.

6

because the debt at issue was not a consumer debt and its determination that subsection (C) is the exclusive provision which governs a "loading up" of credit card debt, the DEBTOR suggests that adoption of the court's logic would compel the same result here.[5] This Court does not agree. Noting that the burden borne by the creditor in demonstrating the debtor's fraudulent intent would not be easily met, the court stated that the creditor was required to prove that the debtors did not actually intend to repay the debt when they obtained the cash advances. Reviewing the evidence presented, the court concluded that testimony by one of the debtors rebutted and overcame the circumstantial evidence introduced by the creditor which indicated that the debtors had no intent to repay the debt.

In this Court's opinion, a creditor's inability to establish the presumption under Section 523(a)(2)(C) does not preclude the creditor from proceeding with a claim under Section 523(a)(2)(A). Specifically, (a)(2)(A) contains no requirement that the debts in question be consumer debts. In this Court's opinion, there is no question that debts incurred for business purposes are eligible for nondischargeability under Section 523(a)(2)(A). Thus, even though the DEBTOR has established to this Court's satisfaction, based on his unrebutted affidavit, that the bulk of the charges in question were for business purposes, so that CHASE is not entitled to the presumption provided in Section 523(a)(2)(C), the DEBTOR is still not entitled to judgment as a matter of law.

---

[5]Later in the opinion, the court tempers its statement that subsections 523(a)(2)(A), (a)(2)(B) and (a)(2)(C) are mutually exclusive, considering the timing of the eve-of-bankruptcy transactions as one factor tending to show the debtors' intent. In effect, the court employs the same test that this Court pronounced in *Brobsten*: the creditor must establish that the debtor had an actual, subjective intent not to repay the charges when they were incurred. The position taken by the court as to the interplay between Subsections (A) and (C) finds little, if any, support. *See In re Shaw*, 294 B.R. 652 (Bankr.W.D.Pa. 2003)(plaintiff given opportunity to amend complaint under Section 523(a)(2)( A) after denial of plaintiff's motion for summary judgment on complaint brought only under Section 523(a)(2)(C) on grounds that presumption did not apply)

7

Though CHASE alleges the traditional allegations of misrepresentation and reliance in its complaint, at this stage of the proceeding, it is sufficient that CHASE'S complaint also designates that the DEBTOR obtained credit by actual fraud. Save for the extreme exception, orthodoxy precludes summary judgment on issues of fraudulent intent. *In re Chavin*, 150 F.3d 726 (7th Cir. 1998); *In re Berry*, 197 B.R. 382 (Bankr.M.D.Fla. 1996) (summary judgment inappropriate in credit card fraud cases). The DEBTOR submitted no evidence that bears on the question of his state of mind when he made the charges. His affidavit focuses only on whether the charges were for business or personal purposes. Even if he had, a fraudulent state of mind is almost always proved through circumstantial evidence and CHASE should be permitted to offer such proof at trial. The DEBTOR'S intent to repay the debts at the time the charges were incurred is disputed, material, outcome determinative and requires a trial to decide. The DEBTOR'S motion for summary judgment, predicated only upon the presumption of Section 523(a)(2)(C), must be denied.

By focusing on Section 523(a)(2)(C) to the exclusion of (a)(2)(A), the DEBTOR has been lead down a primrose path. To an extent, the misdirection here has been caused by the inartfully drafted complaint. Although the complaint does not cite Section 523(a)(2)(C), there is no doubt that it invokes the presumption.[6] Based upon its Pretrial Statement, however, it appears that CHASE has abandoned its claim that Section 523(a)(2)(C) has any application. In any event, this Court's findings preclude further consideration of that issue. This case will proceed as one under Section 523(a)(2)(A) for actual fraud.

---

[6]It refers to the "presumption period," it limits its claim to the charges made during the 60 days before bankruptcy (despite incorrectly referring to them as cash advances and/or convenience check charges), and it alleges that the debt is a consumer debt.

8

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###